E-FILED
Friday, 06 July, 2018   04:18:01 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

TOOLA TAYLOR,
    Plaintiff,

-vs-

UNKNOWN NURSE PRACTITIONER #1, UNKNOWN NURSE PRACTITIONER #2, K. ASHWOOD, TARA GOINS, PATTY THULL, CAMERON WATSON, and DOUG BALDWIN, sued in their individual capacities,
    Defendants.

COMPLAINT
Civil Action No.: _____

## I. JURISDICTION AND VENUE

1.    This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(3) and (4). The matters in controversy arise under 42 U.S.C. § 1983.

2.    Venue properly lies in This District pursuant to 28 U.S.C. 1391(b)(2), because the events giving rise to this cause of action occurred at the Western Illinois Correctional Center ("WICC"), in Mount Sterling, Illinois, which is located within the Central District of Illinois.

## PARTIES

3.    Plaintiff Toola Taylor is and was, at all times relevant hereto, a prisoner in the custody of the Illinois Department of Corrections ("IDOC"). At the time of events relevant hereto, Taylor was incercerated at WICC. He is currently incarcerated at WICC.

4.    Defendant Unknown Nurse Practitioner #1 was, at all times relevant hereto, employed or retained as such by the IDOC to provide medical services at WICC.

5.    Defendant Nurse Practitioner #2 was, at all times relevant hereto, employed or retained as such by the IDOC to provide medical services at WICC.

6.    Defendant K. Ashcraft was, at all times relevant hereto, employed or retained by the IDOC as the Health Care Unit Administrator at WICC. As the health Care Unit Administrator, s/he manages, and is responsible for, its day-to-day operations and executes its policies.

7.    Defendant Tara Goins was, at all times relevant hereto, employed as the Grievance Officer at WICC and, as such, is responsible for the resolution of issues grieved by prisoners at WICC.

8.    Defendant Patty Thull was, at all times relevant hereto, employed or retained by the IDOC as a member of the IDOC Administrative Review Board.

9.    Defendant Cameron Watson was, at all times relevant hereto, Warden/CAO of WICC. As Warden/CAO of the prison, Defendant manages its day-to-day opera-

tion and executes its policies.

10. Defendant Doug Baldwin was, at all times relevant hereto, Director of the IDOC. He is responsible for the overall operation of the IDOC and each institution under its jurisdiction, including WICC, in Mt. Sterling, Illinois.

11. Each defendant is sued individually and in his or her official capacity. At all times mentioned in this complaint each defendant acted under color of state law.

## III. FACTS

12. On or around January 1, 2018, while playing basketball in the gym at WICC, the plaintiff injured his hand.

13. The pain was excruciating, and the swelling in the aftermath led him to believe that his right hand had been broken.

14. For the next several days, he had made several attempts to be seen by a doctor, on an emergency basis.

15. The plaintiff sent in several barely legible request slips to the HCU, as well as informed correctional officers working his tier of his injury.

16. The plaintiff had suffered a very clear and obvious injury, as his hand was approximately the size of a small apple.

17. Not a single individual responded, or commenced any action, concerning his requests.

18. The plaintiff has reason to believe that he received no medical attention, due to the fact that he has a reputation at WICC, for filing grievances against staff, as well as the fact that he has a pending lawsuit against one of the nurses working at WICC HCU.

19. The plaintiff believes that, at least, some of those attempts were logged/recorded by Correctional Officer ("C/O") Risley, whom also witnessed the condition of his hand.

20. On or around January 3-4, 2018, and the plaintiff believes, due to C/O Risley placing the plaintiff on the "sick call list," he was called over to the Health Care Unit ("HCU"), where he had expected to be seen by a doctor, a nurse, or some party with the ability to properly evaluate and treat his injury.

21. Upon arrival at the HCU, the plaintiff was immediately sent back to his housing unit, with the explanation that he would be called back the following day.

22. The plaintiff was never called back to the HCU.

23. Because he seemed to be most apathetic to the plaintiff's situation, the plaintiff made several more attempts, through C/O Risley, to be placed back on the sick call list, so that he might be seen, evaluated, and treated.

24. On January 16, 2018, the plaintiff wrote and submitted an "emergency grievance," to the WICC Warden/CAO Cameron Watson. (See attached grievance hereinafter referred to as "EXHIBIT A").

25. The Warden/CAO agreed with the plaintiff's position and ordered that his grievance be expedited on January 18, 2018. ("EXHIBIT A").

26. The Grievance Officer, Tara Goins, whom the plaintiff has also complained to both the WICC Administration, and the IDOC Office of Inmate Issues, for what he believed to be incompetence, reported that the HCU Administrator, K. Ashcraft, stated that the plaintiff "ha[d] been signed up for nurse sick call and will be seen," and that the issue was, therefore, "moot." (See attached "EXHIBIT B").

27. The grievance officer was responsible for making sure that the emergency grievance issue was not just acknowledged, but resolved, by following through with ensuring that the plaintiff received the evaluation, treatment, etc., etc. - especially, in a situation where an individual is complaining that he has made numerous attempts to be seen and treated by medical staff, and that he has reason to believe that the apparent indifference being shown to him is intentional, due to the fact that, amongst other things, he has pending litigation against a member of HCU staff.

28. Under the situation and circumstances, the plaintiff's grievance issue could never be "moot," where he has not been evaluated or treated, and the grievance officer's failure to ensure that the plaintiff's issue (that he be properly/adequately evaluated, provided with an x-ray, and treated) be resolved.

29. The situation and circumstances described herein demonstrate that Tara Goins was deliberately indifferent to the plaintiff's serious medical needs.

30. On February 5, 2018, the Warden/CAO Cameron Watson concurred with the grievance officer's decision that his issue was moot, despite the fact that he had been informed that the injury was serious, that the plaintiff was in constant pain, and that he was having problems being seen by the HCU, as well as his belief concerning why.

31. Cameron Watson's failure to make sure that the plaintiff received the access and medical treatment that he was seeking, under the situation and circumstances, demonstrates that he was deliberately indifferent to the plaintiff's serious medical needs.

32. The fact that the Warden/CAO failed to adequately supervise his subordinates, under the situation and circumstances, demonstrates that he was indifferent to the plaintiff's serious medical needs.

33. Sometime between the 19th and the 30th of January, 2018, the plaintiff was visited, at his cell, by an unknown nurse, who looked at his hand, asked him if he could move it, and when he did, however slightly, she insisted that there was nothing wrong.

34. The plaintiff responded that he had broken that specific right hand, on more than one occasion, and each time, he was able to slightly move it, only

to later find out that it was broken.

35. Said nurse/nurse practitioner chose to further ignore the blatantly obvious defect protruding from the area in the plaintiff's right hand just above where his wrist, and the base of his 4th and 5th metacarpal, meet.

36. After further banter about the injury, the plaintiff again insisted that said nurse put him in for an evaluation by a doctor, as he did not agree with her alleged assessment.

37. The plaintiff further insisted that he has suffered numerous injuries throughout his lifetime, and that it made absolutely no sense for him to still be experiencing the constant pain and discomfort that he was, if the bone in his hand was not broken, as several weeks had passed, at that point. The nurse then informed him that she would provide him with medication, which only lasted a few-days-or-so.

38. Due to an unrelated altercation with WICC law library staff, the plaintiff was placed in segragation around January 29, 2018, for approximately 30 days, where he continued to complain about his hand, and the pain that he was continuing to endure.

39. While in segregation, the plaintiff believes, sometime between the 10th and 20th of February, the plaintiff was seen by a second nurse/nurse practitioner, and was told practically the exact same thing, described above, as the previous nurse.

40. Again, the plaintiff was denied access to a doctor, and/or proper or adequate evaluation of his condition, despite the chronic pain and discomfort, and blatantly obvious subdermal defect.

41. To add insult to injury, said nurse/nurse practitioner apparently reccommended provision of Ibuprophen, which only lasted approximately three-days-or-so.

42. The plaintiff's subdermal defect was plain-and-obvious and, under the situation and circumstances, even a layperson would have easily recognized the need for a doctor's attention.

43. As described above, on two occasions, the HCU, by and through nurse/nurse practitioners 1 and 2, provided the plaintiff with a total of approximately six (6) days of pain medication. This was inadequate, as the plaintiff endured, at least, eight (8) weeks of constant pain and discomfort.

44. The plaintiff was never considered or provided with a bottom bunk permit, as is the usual practice and procedure where a limb or extremity has been damaged, resulting in the plaintiff being subjected to having to continuously use his damaged hand to climb into the bunk in his assigned cell, which exacerbated his pain and suffering.

45. The plaintiff has been subjected to having to move and carry his property boxes with said damaged hand, which are unusually heavy, due to being laden with voluminous books, post-conviction legal documents, copies of case-law, etc., etc., which further contributed to, and exacerbated the pain and

suffering that the plaintiff was experiencing.

46. The plaintiff suffered serious and chronic pain and discomfort from what he believed to be a broken right hand, and none of the defendants made any real attempt to verify his claims, so that he could be properly, and adequately treated, despite their knowledge of his condition.

47. Under the situation and circumstances, as described above, nurse/nurse practitioner #1's disregard of the plaintiff's complaints, and obvious subdermal defect, compounded with her intentional failure to refer him to the care of a doctor demonstrates that she was deliberately indifferent to his serious medical needs.

48. Under the situation and circumstances, as described above, nurse/nurse practitioner #2's disregard of the plaintiff's complaints, and obvious subdermal defect, compounded with her intentional failure to refer him to the care of a doctor demonstrates that she was deliberately indifferent to his serious medical needs.

49. The plaintiff filed another grievance on March 3, 2018, complaining further about his lack of proper and adequate medical care (See "EXHIBIT C"), which the grievance officer, whom, as mentioned above, the plaintiff had previously complained about, concerning her incompetence/ineffectiveness, effectively refused his grievance because, she erroneously claimed, that he was "griev[ing] a grievance." (See "EXHIBIT D").

50. The grievance officer's claim that the plaintiff was prohibited from filing a grievance because he was grieving a grievance was/is absolutely ridiculous, and demonstrates that her intent was to obstruct the plaintiff from seeking and receiving the relief that he was clearly entitled to.

51. The grievance officer's responses, and continued attempts to disregard, ignore, and/or overlook his issue so that he might not receive relief further demonstrate that she was deliberately indifferent to his serious medical needs and, in fact, the plaintiff believes, was an attempt to cover-up the fact that she had failed to follow through on his previous grievance, making sure that he received the care that he was being deprived of.

52. For some inexplicable reason, the plaintiff did not receive the Warden/CAO's response to the Grievance Officer's Report (EXHIBIT B), concerning his first grievance, until, approximately, February 25, 2018, but signed and deposited the grievance materials necessary for proper appeal by the IDOC Administrative Review Board ("ARB"), on March 1, 2018. (See "EXHIBIT B").

53. Defendant Patty Thull received the plaintiff' referred to at 52 of this complaint on March 6, 2018.

54. Upon recognizing the situation for what it was, the plaintiff believes that Patty Thull intentionally disregarded, and even circumvented his opportunity for relief, by refusing to address the situation and proffering the totally unreasonable excuse that the ARB had "received" his appeal "30 days past" the date of the Warden/CAO's decision. (See EXHIBIT E).

55. The rule/stipulation in/on the Grievance Officer's Report does not

validate, or substantiate, Patty Thull's claim and was, in fact, the plaintiff reasonably believes, an attempt to cover-up and protect the decisions of WICC's warden and grievance officer, as the actual stipulation in the paperwork provided to the plaintiff by the warden, and the grievance officer (EXHIBIT B), stipulates that "a[n] appeal must be SUBMITTED within 30 days after the date of the Chief Administrative Officer's decision" (emphasis added), which is what the plaintiff did.

56.     Incidentally, the plaintiff signed and dated his appeal as February 29, 2018, but it is a reasonable indication, given the situation and circumstances, that he actually did so, on March 1st, as there are only 28 days in February, this year.

57.     The plaintiff signed and mailed his "Appeal to the Director" on the same day.

58.     The process in which an offender submits mail for delivery by the U.S. Postal Service is done by dropping the material(s) for mailing into a designated box, which is usually located on the wing of the housing unit where the offender resides.

59.     After an offender drops his mailing(s) in the designated box, he no longer has control over what happens to it.

60.     It is unreasonable for Patty Thull, or anyone else, for that matter, to believe that the plaintiff had mailed/submitted his appeal at anytime AFTER the 5th day of March, which is when the plaintiff's time to appeal would have actually expired, when she reported that she had **received said appeal on the 6th day of March. Therefore, the plaintiff reasonably believes that Patty Thull KNEW that he had submitted his appeal within the proper timeframe.**

61.     Under the direct supervision of the Director of the IDOC, Doug Baldwin, Patty Thull intentionally disregarded the plaintiff's serious medical needs, thereby renderring them both deliberately indifferent to such.

62.     Defendant Baldwin failed to adequately supervise, and train Patty Thull, whom the plaintiff has reason to believe was given the authority, by him, to act on his behalf.

63.     The incident(s) forming the basis of this complaint are not the first time that the plaintiff has been subjected to the deliberate indifference to his serious medical needs, which is why he has ultimately decided that the filing of this suit is necessary, as, just as before, administrators are attempting to cover-up the fact that the plaintiff was hurt, and subjected to preventable chronic pain and discomfort for a long period of time, and all involved were indifferent to his medical needs, and failed to provide him with proper, and adequate, treatment.

## IV. LEGAL CLAIMS

64.     The plaintiff realleges and incorporates by reference paragraphs 12 - 63 of this complaint.

65.     The deliberate indifference towards the plaintiff's serious medical

needs violated his right to be free of cruel and unusual punishment pursuant to the Eighth Amendment to the U.S. Constitution.

66. Due to the defendants' failure to acknowledge and provide meaningful, proper, adequate, timely treatment and relief, he no longer has plain, adequate or complete remedy at law to redress the wrongs described herein. The plaintiff has been irreparably injured, by his long-enduring pain and suffering, and possible long-term difficulties in his daily activities, resulting from the conduct of the defendants.

## V. PRAYER FOR RELIEF

67. WHEREFORE, the plaintiff respectfully prays that this Court enter judgement granting him:

68. A declaration that the acts and/or omissions described herein violated the plaintiff's rights under the Constitution and laws of the United States.

69. A preliminary injunction ordering the Director of the IDOC and/or the Warden/CAO of WICC to immediately provide the plaintiff with an x-ray and evaluation of such by an outside orthopedic specialist.

70. A preliminary injunction ordering the Director of the IDOC to laterally transfer the plaintiff to another institution, as he has a reasonable fear for his health and safety if he continues to be housed at WICC.

71. Punitive damages in the amount of $50,000.00 against each defendant.

72. A jury trial on all issues triable by jury.

73. Plaintiff's costs in this suit.

74. Any additional relief that this Court deems just, proper, and equitable.

Respectfully submitted,

Dated: 7/6/18

Toola Taylor, pro se
IDOC Reg. No. B41154
Western Illinois C.C.
2500 Route 99 South
Mt. Sterling, IL  62353

Subscribed and sworn
July 6, 2018

X _____

OFFICIAL SEAL
TREVOR L CHANDLER
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:01/23/22

18 E-42

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**OFFENDER'S GRIEVANCE**

18-0054E

| | | |
|---|---|---|
| Date: January 16, 2018 | Offender: (Please Print) TOOLA TAYLOR | ID#: B41154 |
| Present Facility: Western Illinois C.C. | Facility where grievance issue occurred: Western Illinois C.C. | |

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [ ] Mail Handling
- [ ] Restoration of Good Time
- [ ] ADA Disability Accommodation
- [ ] Staff Conduct
- [ ] Dietary
- [x] Medical Treatment
- [ ] HIPAA
- [x] Transfer Denial by Facility
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Other (specify): _____
- [ ] Disciplinary Report: __/__/__ Date of Report _____ Facility where issued

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Summary of Grievance** (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved):

Since January 3, 2018, I have made, on several occasions, attempts to be seen by Health Care Unit Staff, as I have reason to believe that my hand is broken. My attempts, to my knowledge were all logged or recorded by C/O Risley. I was actually, for some odd reason, called over to the HCU, after he first put me on the Sick Call List, only to be told that I'd be called back over, the following day. This never happened. Nor was I seen on either of the other occasions in which I asked C/O Risley to put me back on the list. There is a huge lump over the bone in my hand where I believe there is a break. The pain has been excruciating, at times; and the discomfort has been continuous. I haven't been provided with an evaluation, medication -- NOTHING! And it has been TWO WEEKS! I have had my right

**Relief Requested:** As I believe that my hand is broken, I need an IMMEDIATE medical evaluation, and an x-ray, to determine the extent of the damage. Further, I want the medical administration reprimanded about ignoring my medical needs.

[x] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

Offender's Signature: _[signed]_  ID#: B41154   Date: 1/17/2018

(Continue on reverse side if necessary)

---

**Counselor's Response** (if applicable)

Date Received: __/__/__
- [ ] Send directly to Grievance Officer
- [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: _____

Print Counselor's Name _____  Counselor's Signature _____  Date of Response __/__/__

---

**EMERGENCY REVIEW**

Date Received: 1/18/18   Is this determined to be of an emergency nature?
- [x] Yes; expedite emergency grievance
- [ ] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

Chief Administrative Officer's Signature: _[signed] C. Watson_   Date: 1/18/18

Distribution: Master File; Offender    Page 1    DOC 0046 (8/2012)

---

PLAINTIFF'S EXHIBIT A
- 1 OF 2 -

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**OFFENDER'S GRIEVANCE** (Continued)

hand broken, on more than one occasion, and it is this experience that leads me to believe that it is broken. It is my belief that HCU medical staff are intentionally disregarding my requests to be seen, as I had pending litigation against Susan Moore. I am led to believe THAT because, I find it awful strange that, I have been ignored concerning my request to be seen by the eye doctor to obtain a new pair of glasses, of which I've put in numerous requests over the course of several months - all to absolutely no avail. No response, at least acknowledging receipt of the numerous requests - NOTHING.

THERE MAY BE SERIOUS DAMAGE TO MY HAND...!

PLAINTIFF'S
EXHIBIT
A

- 2 OF 2 -

ILLINOIS DEPARTMENT OF CORRECTIONS
**RESPONSE TO OFFENDER'S GRIEVANCE**

Seg 19

PLAINTIFF'S
EXHIBIT
E

### Grievance Officer's Report

Date Received: January 19, 2018     Date of Review: February 5, 2018     Grievance # (optional): 18-0054E

Offender: Toola Taylor     ID#: B41154

Nature of Grievance: Inmate is grieving medical treatment.

Facts Reviewed: Emergency Grievance. Inmate's grievance reviewed. Inmate states that since January 3, 2018 he has made several attempts to be seen by health care. Inmate states he believes his hand is broken. Inmate states he was called to health care and was told he would be seen the next day. Inmate states he was never called. Inmate states he is in pain. Inmate requests medical attention, x-ray.

K. Ashcraft, HCUA, response states that this offender has been signed up for nurse sick call and will be seen.

RECEIVED
MAR 06 2018
ADMINISTRATIVE
REVIEW BOARD

Recommendation: Based upon a total review of all available information, it is the recommendation of this Grievance Officer that the inmate's grievance be moot.

Tara Goins
Print Grievance Officer's Name          Grievance Officer's Signature
(Attach a copy of Offender's Grievance, including counselor's response if applicable)

### Chief Administrative Officer's Response

Date Received: 2-5-18     ☒ I concur     ☐ I do not concur     ☐ Remand

Comments:

Chief Administrative Officer's Signature          2/5/18

### Offender's Appeal To The Director

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must be submitted within 30 days after the date of the Chief Administrative Officer's decision to the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response, if applicable, and any pertinent documents.)

Offender's Signature     B41154     2-29-18
ID#     Date

CC: HCU

Distribution: Master File; Offender;     Page 1     DOC 0047 (Rev. 3/2005)
Printed on Recycled Paper

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**OFFENDER'S GRIEVANCE**

| Date: 3-10-18 | Offender: (Please Print) Toola Taylor | ID#: B41154 |
|---|---|---|
| Present Facility: Western Illinois C.C. | Facility where grievance issue occurred: Western Illinois C.C. | |

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [ ] Mail Handling
- [ ] Restoration of Good Time
- [ ] ADA Disability Accommodation
- [ ] Staff Conduct
- [ ] Dietary
- [x] Medical Treatment
- [ ] HIPAA
- [ ] Transfer Denial by Facility
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Other (specify)
- [ ] Disciplinary Report: ___/___/___  Date of Report    Facility where issued

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
   Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
   Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
   Chief Administrative Officer, only if EMERGENCY grievance.
   Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Summary of Grievance** (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved): I suffered what I believe to be a broken hand, approximately 2½ months ago. After having filed an emergency grievance, and the Warden's order to expedite said grievance, the Grievance Officer recommended that the grievance be considered "moot" simply because she had been told that I had been scheduled to see a nurse practitioner, despite my request for an immediate medical evaluation, and "an x-ray," to determine the extent of damage to my hand. I was seen twice (because I had signed-up for Sick Call - and my mother had called the institution) by a nurse practitioner who told me that my hand was not broken because I could move it. I was given about 2-3 days worth of medication... EACH TIME my hand has been broken - I was able to move it. For two-and-a-half-months, I have been in CONSTANT pain and discomfort. I was placed in cells where I have had to climb on the top bunk with my broken hand, as well as the fact that I have been forced to move and carry heavy property boxes while being relocated to different housing

**Relief Requested:** I want the medical staff responsible for my "medical evaluation" to be suspended without pay, and that their names be forwarded to me for legal remedy.

- [ ] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

_Toola Taylor_  Offender's Signature     B41154 ID#     3/10/2018 Date

03.18.02

(Continue on reverse side if necessary)

**PLAINTIFF'S EXHIBIT C**
**- 1 OF 2 -**

---

**Counselor's Response** (if applicable)

Date Received: ___/___/___
- [ ] Send directly to Grievance Officer
- [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: _RECEIVED_  _MAR 15 2018_  _GRIEVANCE OFFICE_

Print Counselor's Name    Counselor's Signature    Date of Response

---

**EMERGENCY REVIEW**

Date Received: ___/___/___   Is this determined to be of an emergency nature?
- [ ] Yes; expedite emergency grievance
- [ ] No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

Chief Administrative Officer's Signature     Date

ILLINOIS DEPARTMENT OF CORRECTIONS
OFFENDER'S GRIEVANCE (Continued)

units. At no time did medical staff, at least, deem my injury significant enough that my hand should not be subjected to such activity, and provided me with any medical restriction slip, and/or a bottom-bunk permit. Despite the obvious break - as there is a VERY visible bone deformity in my hand - I was apparently not recommended for an x-ray. The so-called evaluation was bogus, on both counts. I do not believe that my hand is properly healing, either, as I still suffer pain and discomfort. I also believe that, had I received proper and adequate treatment, further pain and discomfort may have been prevented.

PLAINTIFF'S EXHIBIT C

- 2 OF 2 -

Bruce Rauner
Governor

4/3/4

John Baldwin
Acting Director

## The Illinois Department of Corrections

Western Illinois Correctional Center
2500 Route 99 South • Mt. Sterling, IL 62353 • (217) 773-4441 TDD: (800) 526-0844

**DATE:** 3-20-18

**TO:** Taylor-B41154

**FROM:** Grievance Officer
Western Illinois Correctional Center

**SUBJECT:** Medical

Date Received: 3-15-18

The attached is being returned for the reason(s) listed below:

____ Contact your Correctional Counselor

____ Use proper Committed Person's Grievance (DOC 0046)

____ Provide date(s) of disciplinary report(s) and facility where incident(s) occurred.

____ Forward grievance directly to the Administrative Review Board (protective custody, enforced medications, disciplinary reports from other facilities, decisions by the Transfer Coordinator's Office, decisions rendered by the Director).

____ Not submitted in the timeframe outlined in Department Rule 504; therefore, issue will not be addressed further.

____ Unable to determine nature of grievance/correspondence. Submit additional specific information.

____ Illegible copy submitted—submit legible copy for consideration.

____ Request restoration of GCC, segregation time cut, grade restoration to the Adjustment Committee. If request is denied, utilize the grievance process for further consideration.

____ Issue has been previously addressed on _____. No justification for further consideration.

____ Contact the Record Office with your request and/or additional information (sentence calculations, jail credits, etc.)

____ Address concerns to the Illinois Prisoner Review Board, 319 East Madison Street, Suite A, Springfield, Illinois 62706 (Executive Clemency, parole violation issues, etc.).

____ EDSP/EPSC is an administrative decision; therefore, issue will not be addressed further.

**X** Other You cannot grieve a grievance. Forward 1st grievance to ARB if within timeframe.

PLAINTIFF'S EXHIBIT E

ILLINOIS DEPARTMENT OF CORRECTIONS

## Administrative Review Board
## Return of Grievance or Correspondence

4134

**Offender:** Taylor (Last Name)   Toola (First Name)   __ (MI)   B41154 (ID#)

**Facility:** Western

☒ Grievance: Facility Grievance # (if applicable) _____   Dated: 1/16/2018   or ☐ Correspondence: Dated: _____

Received: 3/6/2018 (Date)   Regarding: Medical Treatment/Hand

---

The attached grievance or correspondence is being returned for the following reasons:

**Additional information required:**
- ☐ Provide your original written Offender's Grievance, DOC 0046, including the counselor's response, if applicable.
- ☐ Provide a copy of the Response to Offender's Grievance, DOC 0047, including the Grievance Officer's and Chief Administrative Officer's response, to appeal; if timely.
- ☐ Provide dates when incidents occurred.
- ☐ Unable to determine nature of grievance or correspondence; submit additional specific information. Please return the attached grievance or correspondence with the additional information requested to:
Administrative Review Board, Office of Inmate Issues, 1301 Concordia Court, Springfield, IL 62794-9277

**Misdirected:**
- ☐ Contact your correctional counselor or Field Services regarding this issue.
- ☐ Request restoration of Statutory Sentence Credits to Adjustment Committee. If the request is denied by the facility, utilize the offender grievance process outlined in Department Rule 504 for further consideration.
- ☐ Contact the Record Office with your request or to provide additional information.
- ☐ Personal property and medical issues are to be reviewed at your current facility prior to review by the Administrative Review Board.
- ☐ Address concerns in a letter to: Illinois Prisoner Review Board, 319 E. Madison St., Suite A, Springfield, IL 62706

**No further redress:**
- ☐ Award of Earned Discretionary Sentence Credit is a discretionary administrative decision; therefore, this issue will not be addressed further.
- ☐ Administrative transfer denials are discretionary administrative decisions; therefore, this issue will not be addressed further.
- ☐ Not submitted in the timeframe outlined in Department Rule 504; therefore, this issue will not be addressed further.
- ☒ Administrative Review Board received the appeal 30 days past date of Chief Administrative Officer's decision; therefore, this issue will not be addressed further.
- ☐ This office previously addressed this issue on _____ (Date)
- ☐ No justification provided for additional consideration.

**Other** (specify): _____

Completed by: Patty Thull (Print Name)   *Patty Thull* (Signature)   3/12/18 (Date)

Distribution: Offender
Inmate Issues

*Printed on Recycled Paper*   DOC 0070 (Rev. 3/2018)

VERIFICATION

I have read the foregoing complaint and hereby verify that the matters alleged therein are true and correct, except as to matters alleged on information and belief, and, as to those, I believe them to be true.

_____
Toola O. Taylor

SUBSCRIBED and SWORN to before me on the

6 day of July, 20 18.

_____
Notary Public

OFFICIAL SEAL
TREVOR L CHANDLER
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:01/23/22